## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 09-313 (GK)** |
| | : | |
| **v.** | : | **FILED** |
| | : | |
| **FRANK LOMBARD,** | : | **DEC 1 7 2009** |
| | : | |
| **Defendant.** | : | Clerk, U.S. District and Bankruptcy Courts |

### STATEMENT OF THE OFFENSE

The parties in this case, the United States of America and the defendant, Frank Lombard, stipulate and agree that the following facts are true. This proffer of evidence is not intended to constitute a complete statement of all facts known by the government or the defendant, but is instead a statement of facts intended to provide the necessary factual predicate for the guilty plea in this case and to set forth certain facts relevant to sentencing.

1.      On June 9, 2009, an individual hereinafter referred to as "Confidential Source" or "CS" was charged by Indictment in the United States District Court for the District of Columbia with violations of 18 U.S.C. §§ 2252A(a)(1) and 2256(8) (Transportation of Child Pornography); 18 U.S.C. §§ 2423(b) and 2246(2) (Travel with Intent to Engage in Illicit Sexual Conduct); and 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8) (Possession of Child Pornography). CS subsequently pled guilty in that case and is held without bond pending sentencing. The plea agreement entered into by CS and the United States provides for an agreed-upon sentence based, in part, upon information and assistance provided by CS. On June 15, 2009, and June 23, 2009, prior to CS's guilty plea, CS agreed to meet with law enforcement officers as well as the Assistant United States Attorney

responsible for prosecuting CS's case, to discuss CS's knowledge of individuals involved in the sexual abuse and molestation of children.

2.     During the June 15 and June 23, 2009,  meetings, CS stated that during online chat sessions using an internet-based video chat program that allows its users to engage in online chat conversations while viewing live video images of each other broadcast via webcams, CS had witnessed an individual sexually molesting an African-American child, who appeared to be under the age of ten, and broadcasting that sexual molestation using a webcam.  CS described the individual as a white male, in his mid-forties, tall, with a medium build, brown hair, glasses, and no facial hair.  CS stated that he had met the individual online approximately four years ago while chatting on an online webcam chat program, that they corresponded as frequently as every few weeks over that time period, and that in total CS had seen the individual over webcam as many as one hundred times.  According to CS, on approximately three or four occasions over the past four years, and as recently as approximately one year ago, CS witnessed the individual perform oral sex on an African-American child who appeared to be under the age of ten, and spread and lick the child's anus, all of which activity was displayed to CS using the individual's webcam.  Also according to CS, the individual advised CS of the following: that he lived in the Raleigh/Durham area of North Carolina; that the child was an adopted child, one of two adopted African-American children; that he had a live-in gay male partner who did not participate in the sexual abuse; and that he had allowed other individuals to sexually molest the child.  Maintained within an email account contact list of CS is a contact named "Frank Lombard" with a corresponding e-mail address.

3.     On June 15, 2009, an administrative subpoena was sent to the online webcam chat program used by the defendant and CS requesting user information for the user accounts of the

username of the individual identified by CS.  That particular online webcam chat program is a subscription program that charges its users a fee in order for the user to install proprietary software on the user's computer.  The user must provide certain personal information in order to register and install that software, to include a name and credit card information. On June 17, 2009, representatives of the online webcam chat program responded to that subpoena and provided information that the account corresponding to the username provided by CS belongs to the defendant, Frank Lombard.  The defendant's billing address matched a previous address of the defendant.  The defendant's profile description stated he was interested in "perv fam fun," a reference to incestuous child molestation.  The online webcam chat program also provided the FBI with information regarding a customer service complaint from January, 2007.  That complaint alleged that an individual (hereinafter "complainant") had chatted with Frank Lombard.  During this chat, Frank Lombard told the complainant that he "was into incest" and that he had adopted two African-American children.  The complainant also explained that Frank Lombard described himself, in his profile, as being a "perv dad for fun."

4.       On June 23, 2009, Washington, DC Metropolitan Police Department Office Timothy Palchak conducted an online undercover operation.  During that operation, Detective Palchak engaged in an online chat conversation with the defendant, using the online chat program Yahoo! Instant Messenger.  During that conversation, defendant utilized the "photo share" feature of Yahoo! Instant Messenger and sent to Detective Palchak  nude photos of himself, which pictures match the North Carolina driver's license photograph of the defendant.  Also during that online conversation, the defendant stated that he had sexually molested his adopted, male, African-American child who he had adopted as an infant and is currently five years-old.  He advised Detective Palchak in

3

particular that the child had performed oral sex on him, he had "fingered" the child, and that he had licked the child's anus. He also advised Detective Palchak that he has met other pedophiles online at times when he was willing to display his adopted child on webcam. He further told Detective Palchak that he lived in Durham, North Carolina with his live-in homosexual partner. During the online conversation, the defendant stated that he could not molest the adopted five year-old child when his partner was around, however, his partner was leaving for a four-day business trip the next day, which would allow him the ability to molest the child just as he did the last time his partner had left town. He also stated that he has seen and may still have "hardcore" videos depicting children under five years old engaging in sexual activity, but that he cleans his collection every so often for fear of detection. He further stated that the abuse of the child was easier when the child was too young to talk or know what was happening, but that he had drugged the child with Benadryl during the molestation.

5.     On June 24, 2009, beginning at approximately 9:49 a.m., Detective Palchak engaged in another online conversation with the defendant. During that online conversation, the defendant opened up a live webcam and displayed to Detective Palchak a still photograph of an African-American child who the defendant indicated was his 5 year-old adopted child. Also during that conversation, the defendant invited Detective Palchak to fly to Durham that week in order to have sexual contact with his 5 year-old adopted child. The defendant stated to Detective Palchak that there would be no limits on the sexual activity he could engage in with his 5 year-old adopted child. In particular, the defendant suggested that Detective Palchak fly into Raleigh/Durham Airport and stay at a Hilton hotel on Hillsborough Rd. The defendant expressed during the conversation that he was extremely nervous and excited about Detective Palchak traveling to Durham to have sexual

4

contact with the defendant's 5 year-old adopted child.  The defendant also suggested to Detective

Palchak that the two of them could chat later this evening using webcams, and that at that time, the

defendant would give Detective Palchak a "preview" before he booked his flight.  During this

conversation, the defendant was fully visible over the webcam, including his face.  The defendant

was identical to the North Carolina driver's license photograph of Frank M. Lombard.

6.      On June 24, 2009, the defendant was arrested at his home in Durham, NC, pursuant

to a warrant issued by the United States District Court for the District of Columbia, for violation of

18 United States Code Section 2422(a).  At the time of his June 24, 2009, arrest, two male,

African-American children were found in the home, one of whom is under the age of ten, and taken

into protective custody.  On that date, the defendant was advised of and waived his <u>Miranda</u> rights

and was interviewed by FBI agents and other law enforcement personnel.  During that interview, the

defendant admitted to having adopted both of the children in his home along with his live-in

homosexual partner.  He further admitted to performing sexual acts with his younger adopted son

that were filmed on webcam and broadcast live to other users on the internet with whom he was

chatting.  In particular, the defendant admitted using his webcam to take video of his younger

adopted son while his son was sleeping; taking a webcam video of him placing his penis next to his

son's mouth; and taking a webcam video of himself nude with and erection, while his younger son

sat in his lap with his son's legs spread to expose his son's genitalia.  The defendant also admitted

to chatting online on June 23, 2009, with an internet user whom he believed to be a pedophile

located in Virginia, whom the defendant invited to come to his home that week while the defendant's

partner was away on business in order to have sex with the defendant's sons.  In particular, the

defendant admitted showing that user a photo of his younger son; suggesting that individual fly into

Raleigh Durham International Airport; and recommending that he stay at a particular hotel on Hillsborough Rd. in Durham, NC.

7.      Also on June 24, 2009, a court-authorized search was conducted of the defendant's home in Durham, NC. Seized pursuant to the search were multiple laptop computers, webcams, and storage devices. One of the laptop computers was a Dell brand laptop which the defendant admitted to agents belonged to him and which he had used to receive, download, view, distribute and trade child pornography, as well as for webcam chat sessions using the online webcam chat program that the defendant used to communicate with CS. A forensic analysis of that computer determined that images of child pornography were in fact stored on the computer.

8.      A further forensic analysis of the defendant's Dell brand laptop revealed an archive of the defendant's internet chat and webcam activity using the online webcam chat program that the defendant used to communicate with CS. When a user utilizes the webcam and internet chat functions of that program to chat online with another user, each user is able to view the other user's webcam video image live. The archive function allows for a still image of what is being broadcast live on the user's webcam to be captured and archived each time a user sends a chat message to another user. Review of that archive demonstrated that in August of 2007, the defendant engaged in a webcam chat session with another user, during which session still images of the defendant's webcam video were captured and archived. A review of one of those archived images depicts the defendant sitting fully nude, with an erection, while his younger son, then four years old, is sitting on his lap. The defendant's younger son's hand is placed between the defendant's legs in the area of the defendant's genitals. That image, in live video form, would have been visible to the user with whom the defendant was chatting at the time.

6

KEITH A. BECKER
Assistant United States Attorney

CHRISTOPHER SHELLA, Esquire
Attorney for Defendant

FRANK LOMBARD
Defendant

12/17/09

Date

12/17/09

Date

7